ARKANSAS DEPARTMENT OF HUMAN SERVICES,
St. Francis Division of Children
and Family Services *v.* Richard THOMPSON

97-269 959 S.W.2d 46

Supreme Court of Arkansas
Opinion delivered January 22, 1998

*Candice B. Dickson*, for appellant.

*Rieves & Mayton*, by: *Eric Newkirk*, for appellee.

ROBERT L. BROWN, Justice. Appellant Arkansas Department of Human Services, St. Francis Division of Children and Family Services (DCFS) appeals the circuit court's order reversing

the final order of the Appeals and Hearings Office of the Department of Human Services (DHS) and directing that the name of appellee Richard Thompson be removed from the central registry for the collection of records of cases involving allegations of child maltreatment. Because we conclude that there is substantial evidence to support the final order of DHS, we affirm the agency order and reverse the order of the circuit court.

On August 9, 1995, DCFS received a report that Richard Thompson had sexually abused his fourteen-year-old stepdaughter, JS. An investigation was conducted by DCFS, and on August 28, 1995, the investigative report concluded that there was some credible evidence of child maltreatment.

Thompson requested a hearing to review the determination by DCFS, and a hearing was held before a DHS hearing officer, Sue Tolzer. At the hearing, DCFS presented testimony from its investigating caseworker, Brenda Lewis, and the victim, JS. Brenda Lewis testified that JS told her that for the past three years Thompson had touched her sexually. The incidents included Thompson fondling and sucking her breasts, and once exposing his penis to her and taking her hand and trying to make her touch his penis. More recently, the abuse had escalated to his fondling her and inserting his finger in her vagina. On occasion, he would touch her sexually while "popping" her back or wrestling with her.

JS gave a very similar account at the hearing but with more detail. She explained that the encounters usually occurred in the middle of the night or early in the morning when Thompson would enter her room to wake her up for school. The abuse recently was occurring one to three times a week.[1] Brenda Lewis and JS both testified that Charlene Thompson, JS's mother, had once become suspicious of Thompson when she entered her daughter's room and found Thompson rubbing JS's upper torso. Charlene Thompson could not see whether he was rubbing JS's front or back because she was not wearing her glasses.

---

[1] JS testified that recently it was occurring two to three times a week, but the findings of the hearing officer included one to three times a week.

Thompson's counsel contended that JS fabricated the allegations because she was angry with him for limiting her activity with her new boyfriend. Charlene Thompson, JS's half-brother, Craig Yarbrough, and Thompson himself all testified in his behalf. Charlene Thompson admitted that initially she believed her daughter about the sexual abuse and was suspicious about Thompson's actions in JS's room on that one particular occasion. But she added that her daughter had never complained to her about Thompson's actions in any way. She also testified that JS had a serious problem with lying. She further stated that she had never noticed any unusual behavior by JS or Thompson after he left her bedroom. She concluded that her daughter was not telling the truth about what Thompson had done to her. Craig Yarbrough, JS's half-brother, testified that JS had never told him about any problem she had with Thompson. Thompson testified that he had been cooperative with everyone investigating the matter and again denied the charges.

The DHS hearing officer issued a final order in which she concluded that there was credible evidence to support the allegations that Thompson had sexually abused JS. Thompson then filed a petition for judicial review in the circuit court under the Administrative Procedure Act. *See* Ark. Code Ann. § 25-15-212 (Repl. 1996). The circuit court heard oral arguments from counsel and entered an order finding that there was no credible evidence to support the allegations of sexual abuse by Thompson. The court ordered DHS to remove Thompson's name from the central registry.

On appeal to this court, DCFS's first point concerns the standard of review. The agency argues that we must review the orders of the circuit court and state agency to determine if there was some credible evidence to support the agency's decision and then decide whether the circuit court abused its discretion. Thompson responds that the only question on review is whether there was some credible evidence to support placing Thompson's name in the central registry. Both parties direct this court's attention to *Crawford/Sebastian County SCAN v. Kelly*, 300 Ark. 206, 778 S.W.2d 219 (1989).

 Review of administrative agency decisions, both by the circuit court and by appellate courts, is limited in scope. *Thomas v. Arkansas Dep't of Human Serv.*, 319 Ark. 782, 894 S.W.2d 584 (1995); *Arkansas Bank & Trust Co. v. Douglass*, 318 Ark. 457, 885 S.W.2d 863 (1994). The review by appellate courts is directed not to the decision of the circuit court but to the decision of the administrative agency. *Hankins v. Department of Finance & Admin.*, 330 Ark. 492, 954 S.W.2d 259 (1997); *Thomas v. Arkansas Dep't of Human Serv., supra.* As with all appeals from administrative decisions under the Administrative Procedure Act, the circuit court or appellate court may reverse the agency decision if it concludes:

> (h) [T]he substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the agency's statutory authority;
> (3) Made upon unlawful procedure;
> (4) Affected by other error or law;
> (5) Not supported by substantial evidence of record; or
> (6) Arbitrary, capricious, or characterized by abuse of discretion.

Ark. Code Ann. 25-15-212(h) (Repl. 1996). *See also Wright v. Arkansas State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992). For purposes of judicial review, we have described the considerable deference to be given to an agency decision:

> We have recognized that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues affecting their agencies, and this recognition accounts for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency.

*Wright*, 311 Ark. at 130, 842 S.W.2d at 45.

Turning to the instant case, DCFS argues that DHS's decision was supported by credible evidence and that the decision was not arbitrary, capricious, or characterized by an abuse of discre-

tion. We observe that the sole basis for the circuit court's reversal of that decision was the court's *de novo* review of the record and its finding that there was no credible evidence to support sexual abuse by Thompson. Thus, we initially must decide whether the circuit court invoked the correct standard of review.

In *Crawford/Sebastian County SCAN v. Kelly, supra,* we used the statutory standard of "some credible evidence" to affirm the state agency's decision. At the time *Kelly* was decided, the applicable statute was Ark. Code Ann. § 12-12-516(a) (1987), and it read in pertinent part:

> [u]nless an investigation of a report conducted pursuant to this subchapter determines that there is *some credible evidence* of alleged abuse, sexual abuse, or neglect, all information identifying the subject of the report shall be expunged from the central registry forthwith. [Emphasis added.]

We concluded in *Kelly* as follows:

> Under Ark. Code Ann. § 12-12-516, the apposite question is whether there is some credible evidence of alleged child abuse to support the maintenance of appellee's name in the State Central Registry, not whether there is substantial evidence of such abuse.

*Kelly,* 300 Ark. at 209, 778 S.W.2d at 221.

██ Since the *Kelly* decision in 1989, the applicable section of the Child Abuse Reporting Code dealing with child maltreatment investigations and the requirement that some credible evidence exist for the inclusion of a perpetrator's name in the central registry has been amended several times. *See* Act 1334 of 1997; Act 1341 of 1995; Act 809 of 1995; Act 1126 of 1993; Act 1208 of 1991, now codified at Ark. Code Ann. § 12-12-512 (Repl. 1995, Supp. 1997). Throughout these amendments, the test has remained the same that entry of a name of one who engages in child maltreatment will be entered on the central registry when some credible evidence supports the agency decision.

██ We are now confronted with the question of whether our reasoning in *Kelly* was correct on the proper standard to use in our review. We conclude that it was not. The Administrative Procedure Act makes it perfectly clear that the circuit courts and

appellate courts review state agency decisions to determine whether they pass muster under the six criteria set out in § 25-15-212(h). Thus, under the APA it is not the role of the circuit courts or the appellate courts to conduct a *de novo* review of the record to determine whether some credible evidence of child maltreatment exists. Rather, we review the case to ascertain whether there is substantial evidence to support the agency decision or whether the agency decision runs afoul of one of the other criteria set out in § 25-15-212(h). This court was simply incorrect when we said in *Crawford/Sebastian County SCAN v. Kelly*, 300 Ark. 206, 778 S.W.2d 219 (1989), that we review a decision to determine whether there is some credible evidence of child abuse. We overrule the *Kelly* case on this point.

■ Using the proper standard of review, we hold that substantial evidence does exist to support the agency's decision. JS testified in detail about Thompson's sexual abuse over the course of three years. Her mother, Charlene Thompson, even admitted to her own suspicions on one occasion, though she later recanted and testified that she believed her daughter was not telling the truth about Thompson's abuse. This proof easily qualifies as substantial evidence supporting the state agency's final order. In a similar vein, we have held repeatedly that the testimony of a rape victim, standing alone, meets the substantial evidence criterion. *See, e.g., Puckette v. State*, 324 Ark. 81, 918 S.W.2d 707 (1996); *Laughlin v. State*, 316 Ark. 489, 872 S.W.2d 848 (1994).

The order of the circuit court is reversed and the decision of DHS is reinstated.