# ARKANSAS DEPARTMENT of HEALTH and HUMAN SERVICES *v.* R.C.

06-858 249 S.W.3d 797

Supreme Court of Arkansas
Opinion delivered February 8, 2007

*Gray Allen Turner*, Arkansas Dep't of Health & Human Services, Office of Chief Counsel, for appellant.

*Jeff Rosenzweig*, for appellee.

PAUL DANIELSON, Justice. Appellant Department of Health and Human Services (DHHS) appeals from the circuit court's order, which directed that appellee R.C.'s name be removed

from the child-maltreatment registry.[1] DHHS asserts four points on appeal: (1) that the administrative law judge's findings were supported by substantial evidence; (2) that the administrative procedure followed by DHHS did not deprive R.C. of her constitutional right to appear and be heard by an impartial hearing official; (3) that the circuit court erred in determining that the burden of proof in a child-maltreatment registry hearing was clear and convincing evidence; and (4) that R.C. was provided adequate discovery. We affirm the administrative order and reverse the circuit court.

The underlying facts are these. On September 15, 2003, a report was made to the child-abuse hotline regarding the alleged maltreatment of R.C.'s four-year-old foster daughter, T.B. The Child Maltreatment Reporting Form that was completed noted that the following physical indicators were observed: "bruising posterior aspect of thighs just beneath buttocks, interior aspect of thighs + anterior vaginal area. Markings consisting of single + double thin straight lines." On September 30, 2003, Investigator Dale Ridge, a civilian investigator for the State Police Crimes Against Children division of the Arkansas State Police, interviewed R.C. at the state police headquarters and completed a case form. The case form noted that no one else was present during the interview; that he completed a "Description of Subject" form on R.C.; that he advised R.C. of her rights; that her responses were recorded on a *Miranda* rights form, which she initialed; and that after being advised of her rights and signing the rights waiver, R.C. denied spanking T.B.

That same day, Special Agent P.M. Ward of the Arkansas State Police submitted a report to Investigator Ridge stating that R.C. had been administered a polygraph examination that same day to determine whether or not she had ever spanked T.B. The report stated that prior to the examination, R.C. denied ever spanking T.B. with anything at anytime. It further stated that the "physiological responses noted on this subject's polygraph charts are in such a pattern as to indicate that the subject, [R.C.], has been deceptive in answering the above questions." The report further provided that in a post-test interview, R.C. stated that on September 14, 2003, she asked T.B. if she needed to use the restroom, to which T.B. responded no, but that after a while, T.B. went to

---

[1] Because the record in the instant case was sealed by order of the circuit court, both the appellee and the minor child will be referred to by their initials.

use the restroom. R.C. stated that when she herself got to the bathroom, T.B. had taken off her diaper and had feces all over the floor, the wall, and some on herself. R.C. stated that she told T.B., "I'm going to get you," and then R.C. went to get a switch off of the dresser and swatted T.B. a few times on the buttocks. R.C. said that she then cleaned T.B. up and cleaned the bathroom. R.C. further stated that she did not know how T.B. received the bruises on her because she had not spanked her hard enough to leave bruises. R.C. then refused to provide a written statement and requested an attorney.

Typed investigation notes in the matter, dated October 14, 2003, stated that the four-year-old victim had a disability and attended a day care that provided medical services. The report indicated that T.B. had bruises on her legs and vaginal area that were not consistent "with history." It further stated that photographs were made of the marks and that the Department of Child and Family Services was notified. It continued that the other foster children in the home had been moved prior to being interviewed and that R.C. failed a polygraph test and admitted that "she hit the children with a switch but denied leaving the bruises." It concluded that there were "no other explanations given for the marks."

In a report to the prosecuting attorney from the Arkansas State Police Crimes Against Children Division, dated the same date, the following summary was provided:

> Find both allegations True. The victim attends a Day Care with Trained Medical Staff. The staff found bruises on the victim that was not consistent with the history given. The marks were consistent with spanking with the diaper removed. The victim is 4 yrs. old and has a disability. The victim is not potty trained. The foster mother failed a polygraph test and denied leaving the marks but did admit to hitting the victim with a switch. The brother and foster sibling stated that the foster mother hit them with a switch. DCFS was made aware of the marks and did not call the hot line. The foster children were moved and two of the foster children appeared to have been coached.

The report then concluded with an overall investigative finding of "True" and was approved by Investigator Ridge on October 14, 2003, and by T.G. Stone, Ridge's supervisor, the next day. Consequently, that day, a child-maltreatment investigation determination notification was sent to R.C., stating that the evidence supported the

allegation of child maltreatment, that R.C. was named as the offender, and that her name would be placed on the child-maltreatment registry. The notice further informed R.C. of her right to an administrative hearing should she disagree with the investigation determination.

On January 21, 2004, R.C.'s counsel sent a letter to the Department of Health and Human Services's Office of Appeals and Hearings, stating that R.C. had been placed on the child-maltreatment registry, but had received no notice of that placement due to the fact that the state police sent her notice to an incorrect address. She demanded a hearing in the matter and alleged that the denial of a hearing, where she was not served with notice, would violate her state and federal due-process rights. A hearing was subsequently scheduled in the matter.

On July 2, 2004, R.C. filed her motion with DHHS's Office of Appeals and Hearings to hold unconstitutional the provisions of law outlining DHHS's procedures for operating the child-maltreatment registry. In her motion, R.C. alleged that the use of administrative law judges, who are part of DHHS's Office of Chief Counsel and subordinate to the chief counsel, who in turn prosecutes child-maltreatment cases, violated the federal and state guarantees of due process. In addition, she asserted that the standard used to place a person on the child-maltreatment registry, that of a preponderance of the evidence, was unconstitutionally low. R.C. subsequently filed an amended motion on August 9, 2004.

On July 15, 2004, a hearing was held on R.C.'s challenge to the finding of substantiated child maltreatment. At the hearing, Investigator Ridge testified about the investigation and his findings. The hearing was then continued until August 16, 2004, when Debby Taylor, the registered nurse at T.B.'s daycare, and Sheila Allison, a teacher's aide at the daycare, testified regarding their examination of T.B.'s bruises. R.C. also testified, denying that she whipped T.B. with a switch and further denying that she ever told any individual with the state police that she had used a switch. At the conclusion of the testimony, the administrative law judge (ALJ) took the matter under advisement.

On December 14, 2004, the ALJ issued his final order in the matter. Specifically, the ALJ found, in pertinent part:

> 9. I find that [R.C.], more likely than not, whipped TB with a switch causing the 8 to 10 straight line bruises. Although Ms. [C.]

denied it, Mr. Ridge gave credible testimony that Ms. [C.] had admitted that she had whipped TB with a switch. That Ms. [C.] did whip the children with a switch was corroborated by 2 of the 3 other foster children. I did not find Ms. [C.]'s denial to be credible.

The ALJ then concluded that the agency had met its burden of proof "of presenting by a preponderance of the evidence" that R.C. abused T.B., stating, in pertinent part:

Under Arkansas law it is abuse if a caretaker causes a nonaccidental physical injury to the child. Abuse does not include reasonable and moderate physical discipline inflicted by a parent or guardian. Age, size, child's condition, location of the injury, and recurrence are considered in determining reasonable and moderate discipline. Foster parents are forbidden expressly in their training to use physical punishment inflicted in any manner on the children in their care.

Under Parker [88 Ark.App. 222, 197 S.W.3d 33 (2004)], Ms. [C.] as a foster parent is a "guardian", and therefore afforded the protection of the reasonable and moderate physical discipline exception to abuse. Although the discipline caused injuries not more serious than transient pain and minor temporary marks, I find that the physical discipline was not reasonable and moderate due to the age of the child, 4 years old, due to the location and number of injuries, due to the child's condition of being a foster child and developmentally delayed, and due to Ms. [C.]'s attempt to conceal her use of physical discipline. It is not reasonable for Ms. [C.] to use physical discipline in the face of the clear directive to foster parents that physical discipline is unacceptable.

Upon consideration of the circumstances in this case, I find that the agency has presented by a preponderance of the evidence that [R.C.] abused TB, and the allegation is found to be true.

[R.C.]'s name shall remain on the Child Maltreatment Central Registry insofar as the entry pertains to the abuse report, #943966.

On January 6, 2005, R.C. filed a complaint and petition for judicial review of administrative adjudication in the circuit court. A briefing schedule was set by the circuit court, and briefs were filed. R.C.'s brief raised the following issues: (1) the scheme by which non-independent ALJs decide the issues violated federal and state guarantees of due process of law; (2) the standard of prepon-

derance of the evidence was unconstitutionally low and should be clear and convincing evidence; (3) the evidence was insufficient to sustain placement of her name on the registry; and (4) R.C.'s rights were violated by DHHS's improperly withholding information from her.

On January 18, 2006, the circuit court held a hearing at which it took up R.C.'s challenges. At the conclusion of the hearing, the circuit court stated that it was going to rule in R.C.'s favor on all four points. The circuit court then memorialized its decision in its order of April 21, 2006. In that order, the circuit court made the following findings: (1) that the administrative procedure within DHHS was unconstitutional as it violated due process; (2) that the preponderance-of-the-evidence standard of proof for being placed on the child-maltreatment registry was unconstitutionally low; (3) that the finding of the ALJ· was not supported by substantial evidence and was arbitrary, capricious, and characterized by an abuse of discretion; and (4) that DHHS violated R.C.'s federal and state due-process rights by improperly "deidentifying" a medical report. For these reasons, the circuit court ordered that R.C.'s name be removed from the child-maltreatment registry. DHHS subsequently filed its notice of appeal.

## I. Substantial Evidence

DHHS argues that there was substantial evidence to support the finding of the ALJ that R.C. caused a nonaccidental physical injury to T.B. It asserts that "abuse" is defined as "any nonaccidental physical injury" and that T.B.'s nonaccidental injuries were clearly established by the evidence, where R.C. conceded that she used a switch to discipline the child, where T.B.'s injuries were consistent with a switching, and where the injuries appeared immediately after the admitted use of a switch to administer discipline. It further maintains that none of the statutory exceptions to the definition of "abuse" are applicable.

R.C. initially asserts that the rationale behind this court's case law, holding that its review on appeal from a circuit court's decision under the Administrative Procedure Act is directed at the decision of the agency and not the circuit court, should not apply to the instant case because, here, there was a sole fact-finder on the payroll of, and directly supervised by, the same person responsible for prosecuting the case. She states that even assuming *arguendo* that there was sufficient evidence to sustain a finding that she did inflict

the marks on the child, the ALJ's findings were flawed because the evidence taken in the light most favorable to DHHS was that even at four years of age, reasonable and moderate physical discipline would be appropriate where a child defecated on herself and smeared it all over the bathroom.

In reviewing matters under the Arkansas Administrative Procedure Act (APA), Ark. Code Ann. § 25-15-201–217 (Repl. 2002 & Supp. 2005), this court uses the following standard of review:

> Review of administrative agency decisions, both by the circuit court and by appellate courts, is limited in scope. *Thomas v. Arkansas Dep't of Human Serv.*, 319 Ark. 782, 894 S.W.2d 584 (1995); *Arkansas Bank & Trust Co. v. Douglass*, 318 Ark. 457, 885 S.W.2d 863 (1994). The review by appellate courts is directed not to the decision of the circuit court but to the decision of the administrative agency. *Hankins v. Department of Finance & Admin.*, 330 Ark. 492, 954 S.W.2d 259 (1997); *Thomas v. Arkansas Dep't of Human Serv., supra.* As with all appeals from administrative decisions under the Administrative Procedure Act, the circuit court or appellate court may reverse the agency decision if it concludes:
>
> (h) [T]he substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the agency's statutory authority;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error or law;
>
> (5) Not supported by substantial evidence of record; or
>
> (6) Arbitrary, capricious, or characterized by abuse of discretion.
>
> Ark. Code Ann. 25-15-212(h) (Repl. 1996). *See also Wright v. Arkansas State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992). For purposes of judicial review, we have described the considerable deference to be given to an agency decision:

> We have recognized that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues affecting their agencies, and this recognition accounts for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency.

*Wright*, 311 Ark. at 130, 842 S.W.2d at 45.

*Ark. Dep't of Human Servs. v. Thompson*, 331 Ark. 181, 185, 959 S.W.2d 46, 48-49 (1998).

Substantial evidence is valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support the agency decision. *See Ark. Dep't of Human Servs. v. Bixler*, 364 Ark. 292, 219 S.W.3d 125 (2005). The challenging party has the burden of proving an absence of substantial evidence and must demonstrate that the proof before the administrative agency was so nearly undisputed that fair-minded persons could not reach its conclusion. *See id.* The question is not whether the evidence would have supported a contrary finding, but rather whether it supports the finding that was made. *See id.* Because administrative agencies are better equipped than courts, by specialization, experience, and more flexible procedures, to determine and analyze underlying legal issues affecting their agencies, the court may not substitute its judgment and discretion for that of the administrative agency. *See id.*

While R.C. asserts that this standard of review is not applicable to determinations made by the Office of Hearings and Appeals within DHHS, this has been the standard of review used by this court in its previous reviews of determinations of maltreatment made by that agency. *See, e.g., C.C.B. v. Ark. Dep't of Health & Humans Servs.*, 368 Ark. 540, 247 S.W.3d 870 (2007); *Ark. Dep't of Human Servs. v Bixler, supra; Ark. Dep't of Human Servs. v. Thompson, supra.* In addition, we have held that the statutory scheme and procedures in place for making such determinations are not violative of due process, nor do they perpetuate bias or even an appearance of bias. *See C.C.B. v. Ark. Dep't of Health & Human Servs., supra.* Accordingly, we decline to develop a different standard of review for such determinations. With our longstanding standard in mind, we turn to the issue before us.

Arkansas Code Annotated § 12-12-503(6) (Repl. 2003) provides that child maltreatment "means abuse, sexual abuse,

neglect, sexual exploitation, or abandonment." Ark. Code Ann. § 12-12-503(6) (Repl. 2003).[2] "Abuse" is defined, in pertinent part:

> (2)(A) "Abuse" means any of the following acts or omissions by a parent, guardian, custodian, foster parent, person eighteen (18) years of age or older living in the home with a child whether related or unrelated to the child, or any person who is entrusted with the juvenile's care by a parent, guardian, custodian, or foster parent, including, but not limited to, an agent or employee of a public or private residential home, child care facility, public or private school, or any person legally responsible for the juvenile's welfare, but excluding the spouse of a minor:
>
> . . . .
>
> (v) Any nonaccidental physical injury[.]

Ark. Code Ann. § 12-12-503(2)(A)(v) (Repl. 2003).

Here, there was evidence that R.C. was the foster mother of four-year-old T.B. and that T.B. was found to have bruising on the back of her thighs, from the back of her knees to the bottom of her buttocks. There were at least eight to ten bruises, which were evidenced by several straight lines, some of which were near the child's vaginal area. In addition, there was testimony that the bruises were at least twenty-four hours old. Two of the other children being fostered by R.C. told Investigator Ridge that R.C. used a switch when administering punishment, and R.C. herself stated during the investigation that she had used a switch to swat T.B. upon finding her in the bathroom with feces on her and spread about the bathroom.

While R.C. disputed that she admitted to using a switch for punishment, the credibility and the weight of the evidence is within the administrative agency's discretion. *See Ark. Dep't of Human Servs. v. Bixler, supra.* It is further within the prerogative of the board, or as here, the ALJ, to believe or disbelieve any witness and to decide what weight to accord the evidence. *See C.C.B. v. Ark. Dep't of Health & Human Servs., supra.*

---

[2] This statute was amended by Act 1176, § 2, and Act 1706, § 1 of 2005. However, we cite to the version of the statute that was in effect at the time of the alleged maltreatment.

It is clear to this court that the ALJ believed Investigator Ridge's testimony regarding his investigation of the matter and disbelieved R.C. Accordingly, we hold that there was substantial evidence of a nonaccidental physical injury.

However, our analysis does not end there. We must next determine whether any of the exceptions to a finding of abuse are present. Arkansas Code Annotated § 12-12-503(2)(C), provides:

> (C)(i) "Abuse" shall not include physical discipline of a child when it is reasonable and moderate and is inflicted by a parent or guardian for purposes of restraining or correcting the child.

> (ii) "Abuse" shall not include when a child suffers transient pain or minor temporary marks as the result of an appropriate restraint if:

> . . . .

> (iii) Reasonable and moderate physical discipline inflicted by a parent or guardian shall not include any act that is likely to cause and which does cause injury more serious than transient pain or minor temporary marks.

> (iv) The age, size, and condition of the child and the location of the injury and the frequency or recurrence of injuries shall be considered when determining whether the physical discipline is reasonable or moderate[.]

Ark. Code Ann. § 12-12-503(2)(C) (Repl. 2003). We conclude that none are present.

Our court of appeals has determined, for purposes of Ark. Code Ann. § 12-12-503(2)(C)(i), that the term "guardian" includes a foster parent.[3] *See Dep't of Human Servs. v. Parker*, 88 Ark. App. 222, 197 S.W.3d 33 (2004). Thus, if R.C. used reasonable and moderate physical discipline for purposes of correcting T.B., her actions did not constitute abuse. So long as the discipline was not likely to cause and did not cause injury more serious than transient pain or minor temporary marks, it is considered reasonable and moderate under the statute. *See* Ark. Code Ann. § 12-12-

---

[3] We note that DHHS does not dispute the *Parker* decision, nor that R.C.'s status as a foster parent requires examination of the exceptions to a finding of abuse.

503(2)(C)(iii). That being said, when determining whether the physical discipline was reasonable or moderate, one must also consider the age, size, and condition of the child, as well as the location of the injury and the frequency or recurrence of the injuries. *See* Ark. Code Ann. § 12-12-503(2)(C)(iv).

 Again, T.B. was a four-year-old child who suffered from cerebral palsy, used a walker for assistance, and was not potty-trained. Her injuries consisted of eight to ten straight-line bruises from the top of her knees, to the bottom of her buttocks, with some near her vaginal area. Moreover, the bruises were at least twenty-four hours old, according to the medical nurse on staff at T.B.'s daycare. Taking into consideration the factors set forth in section 12-12-503(2)(C)(iv), we simply cannot say that such injuries constituted "minor temporary marks," nor were they the result of reasonable or moderate physical discipline. For these reasons, we affirm the findings of the ALJ and reverse the circuit court on this issue.[4]

## II. *Organizational Structure of DHHS*

DHHS next argues that its organizational structure is in no way unconstitutional for the following reasons: (1) the adjudication complied with the Administrative Procedures Act; (2) there was no *ex parte* communication; (3) there was no unethical conduct; (4) the ALJ had no personal interest in the adjudication; (5) no one in the ALJ's supervisory chain made an appearance in the course of the adjudication; (6) no one that the ALJ supervises made an appearance in the course of the adjudication; and (7) no staff organizationally located within the Office of Appeals and Hearings made an appearance in the course of the adjudication.

R.C. responds that because ALJs are part of DHHS's Office of Chief Counsel and are subordinate to the chief counsel, the

---

[4] R.C. suggests that while the finding of the ALJ was based on an alleged violation of an alleged DHHS policy banning corporal discipline of foster children, that policy was not the statutory law, nor was it presented at the hearing; thus, it could not be a basis for a finding adverse to her. We note that while it appears that the ALJ reached its conclusion that there was a preponderance of evidence of maltreatment, finding in part that R.C. violated such a DHHS policy, our review of the record reveals that such a policy or regulation was not admitted during either DHHS's administrative review, nor the review made by the circuit court. Nonetheless, it is clear to this court that the ALJ's final legal determination was that R.C. did not use reasonable and moderate discipline on T.B. That is the ultimate determination when examining abuse, and that is the basis upon which we affirm the ALJ's decision.

statutory and regulatory scheme of DHHS's administrative process violates federal and state constitutional due-process rights. She avers that because the ALJ works for the chief counsel, who is the prosecutor, no ALJ in the DHHS system can be fair or even have the appearance of fairness.

This precise issue was recently decided by this court in *C.C.B. v. Arkansas Department of Health & Human Services*, 368 Ark. 540, 247 S.W.3d 870 (2007). There, we held that an allegation regarding the appearance of impropriety, based on the fact that the ALJ and prosecutor were employees of the same agency seeking to keep the alleged maltreater on the child-maltreatment registry, standing alone, was insufficient to demonstrate bias or even an appearance of bias. We further held that the appellant had not demonstrated that he was denied due process under either the Fourteenth Amendment of the U.S. Constitution, nor Article 2, § 8 of the Arkansas Constitution.

■ In the instant case, the ALJ denied R.C.'s motion to hold the procedures of DHHS unconstitutional. For the reasons previously set forth in *C.C.B. v. Arkansas Department of Health & Human Services, supra*, we affirm the ALJ's denial of R.C.'s motion and reverse the circuit court on this point.

### III. Burden of Proof

DHHS argues that in the context of child-maltreatment registry hearings, the risk to children from failing to include child abusers on the registry must be weighed against the risk to the accused individual from improper inclusion. For that reason, it claims, the proper standard of review is that provided by statute, a preponderance of the evidence. R.C. responds that the circuit court correctly held that the statutory burden of proof in child-maltreatment registry cases, that of a preponderance of the evidence, was unconstitutionally low. She further asserts that persons on the registry are precluded from being foster parents, of which she was one.

This issue was also recently examined by this court in *C.C.B. v. Arkansas Department of Health & Human Services, supra*. There, we held that C.C.B. had failed to demonstrate that he was prejudiced by use of the preponderance standard.

We have observed that the traditional standard required in a civil or administrative proceeding is proof by a preponderance of the evidence. *See C.C.B. v. Ark. Dep't of Health & Human Servs.,*

*supra.* Arkansas Code Annotated § 12-12-512(a)(2)(A)(i–ii) (Repl. 2003) specifically provides that allegations of child maltreatment that are found to be true must be supported by a preponderance of the evidence. *See* Ark. Code Ann. § 12-12-512(a)(2)(A)(i–ii) (Repl. 2003). Here, the ALJ denied R.C.'s claim that the standard of proof of preponderance of the evidence was unconstitutionally low. We agree.

■ The APA only permits this court to reverse the ALJ's decision if we conclude that the decision violates one of the bases set forth in Ark. Code Ann. § 25-15-212(h), that is, if R.C.'s substantial rights have been prejudiced because that decision was violative of constitutional or statutory provisions; was in excess of DHHS's statutory authority; was made upon unlawful procedure; was affected by other error or law; was not supported by substantial evidence of record; or was arbitrary, capricious, or characterized by an abuse of discretion. *See* Ark. Code Ann. § 25-15-212(h). Here, the preponderance-of-the-evidence standard of review was clearly established by the General Assembly in section 12-12-512(a)(2)(A)(i–ii). It is a clear standard which, as already stated, is traditionally used in the context of administrative hearings. Moreover, nothing was presented during the administrative-review process, nor during this appeal, which convinces us that a clear-and-convincing standard would be appropriate. We cannot say that any of the bases under section 25-15-212(h) exist so as to permit reversal of the ALJ's decision. Accordingly, we affirm the ALJ's denial of R.C.'s motion and reverse the circuit court on this point as well.

### IV. Adequacy of Discovery

DHHS, in its final point on appeal, argues that the ALJ did not err in receiving an unredacted version of a medical note into the record, where R.C. was only provided with a redacted version of the note and R.C showed no prejudice. R.C. responds that, because the file she received contained an improperly "deidentified" medical report, she could not properly cross-examine the witnesses. She submits that, should she not prevail on the other issues, a remand with instructions to permit access to the unredacted document would be appropriate.

We hold that there was no violation of R.C.'s rights. Arkansas Code Annotated § 12-12-506(e)(1) (Repl. 2003) provides that DHHS

shall not release data that would identify the person who made the report unless a court of competent jurisdiction orders release of the information after the court has reviewed, in camera, the record related to the report and has found it has reason to believe that the reporter knowingly made a false report.

Ark. Code Ann. § 12-12-506(e)(1) (Repl. 2003).

At issue in the instant case is a medical chart note that detailed T.B.'s injuries. While R.C. received a copy of the note, both the title of the facility and the author of the note were "blacked out" or redacted in an overzealous effort to maintain the confidentiality of the case.[5] While it was never revealed whether the author of the note was the reporter, counsel for DHHS stated on July 15, 2004, that Debby Taylor was the author. Debby Taylor later testified, on August 16, 2004, that she authored the note in her capacity as the nurse at T.B.'s daycare. Following that admission, R.C.'s counsel was able to cross-examine Ms. Taylor.

■ We hold that there was no error. While R.C. may not have known the author's identity prior to the beginning of the hearing on July 15, 2004, she was provided the author's name that day. Then, it was not until a month later that Ms. Taylor was called by DHHS as a witness. Consequently, R.C. had a month's time to perfect her cross-examination of the witness. We cannot say that the initial nondisclosure in any way violated her constitutional rights. Accordingly, we affirm the ALJ on this issue and reverse the circuit court on this and all other points. We further remand the matter to the circuit court for entry of an order consistent with this opinion.

Administrative decision affirmed; circuit court reversed and remanded.

IMBER, J., not participating.

---

[5] At the administrative hearing, counsel for DHHS admitted that the name on the note should most likely have not been blacked out:

> COUNSEL FOR DHHS: What I will not identify, as according to statute, I cannot identify the person who call[ed] the report in. I can't identify the people who did that. The document you're referring to was blacked out had a name of Debby Taylor, but it doesn't identify her as someone who called any reports in. Let me finish that. Probably should not have been blacked out. But that's not my responsibility.