SLIP OPINION



# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-17-173

| | |
|---|---|
| JANEFER OGBORN<br><br>APPELLANT<br><br><br>V.<br><br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES<br><br>APPELLEE | **Opinion Delivered** November 8, 2017<br><br>APPEAL FROM THE BENTON<br>COUNTY CIRCUIT COURT<br>[NO. 04CV-15-765]<br><br>HONORABLE THOMAS SMITH,<br>JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Janefer Ogborn (Ogborn) appeals the administrative decision of the Office of Appeals and Hearings (OAH) of the Arkansas Department of Human Services (DHS) to place her name on the Child Maltreatment Central Registry. We affirm.

I. *Facts and Procedural History*

On August 9, 2013, the Bella Vista Police Department (BVPD) was notified of a matter involving the possible child maltreatment of S.O. (age 15), K.O. (age 12), and A.O. (age 11). The children informed officers that they were forced to stay inside their room for long periods of time with little contact with the outside world and were often forced to go without adequate food or drink. From this initial contact, three separate but concurrent proceedings were commenced against Ogborn: a dependency-neglect proceeding, criminal proceedings, and the child-maltreatment-registration proceeding, which is the basis of this appeal.

SLIP OPINION

A. Dependency-Neglect Proceeding

DHS was notified by BVPD of the children's condition. DHS removed the children from the parents, Janefer and James Ogborn.[1] DHS did so because of the children's general appearance: they were underweight and undersized for their ages, they were extremely thin and emaciated, their skin was pale, and their eyes were very sensitive to light. DHS also removed the children because of the parental treatment within the home: the children were often forced to stand or sit cross-legged in their room for extended periods of time; they were not allowed to sleep in their beds and were forced to sleep on the hardwood floors in their room as punishment; and their meals consisted of oatmeal or bread with a smear of peanut butter. Additionally, DHS removed the children because of the living conditions within the home. The children all shared the same bedroom, which was painted in a military-type camouflage pattern with only a single lightbulb for lighting. The only window in the room was covered with cloth and sheets with the edges taped to prevent them from looking out and sunlight from entering. The room itself was very clean and tidy, but the bunkbeds did not appear to have been slept in. After removal, DHS initiated a dependency-neglect proceeding in the Benton County Circuit Court.

The Benton County Circuit Court held an adjudication hearing on October 8, 2013. At the hearing, the circuit court received into evidence the affidavit of facts outlining the facts recited above, the case plan, some photos, the children's medical records, and Ogborn's

---

[1] James is the biological father of the three children; Janefer is their stepmother. James is not a party to this appeal.



stipulation to a dependency-neglect finding. The court then found the children were dependent-neglected as to Ogborn based on inadequate food, malnutrition, environmental neglect, and repeated and extreme cruelty. She did not appeal the adjudication order.

### B. Criminal Proceeding

After the BVPD responded to the complaints of possible child maltreatment, the State filed criminal charges against Ogborn stemming from these allegations. She was charged with three counts of first-degree endangering the welfare of a minor, one count of aggravated assault, three counts of first-degree false imprisonment, and one count of third-degree battery. She proceeded to a jury trial on these charges. The trial court ultimately directed a verdict on all but the charge of third-degree battery, and the jury subsequently acquitted Ogborn on that count.

### C. Child-Maltreatment-Registration Proceeding

Simultaneously with the dependency-neglect action, the Arkansas State Police Crimes Against Children Division (CACD) conducted a child-maltreatment investigation. On October 9, 2013, CACD issued a notice of true finding of abuse/neglect and that, as a result, Ogborn's name would be placed on the child-maltreatment central registry. Ogborn timely filed a notice of appeal and a request for an administrative hearing. The administrative hearing was continued pending the outcome of the criminal trial.

In February 2015, DHS filed a motion for summary judgment in the administrative appeal, alleging that because the circuit court had adjudicated the children dependent-neglected as to Ogborn based on the same allegations and facts as presented in the administrative appeal, the administrative law judge (ALJ) was required under Arkansas Code

SLIP OPINION

Annotated section 12-18-807 (Repl. 2016) to render a decision without a hearing and place Ogborn's name on the child-maltreatment registry. Ogborn responded, asserting that because the adjudication was based on stipulation, it was not actually litigated for purposes of issue preclusion and section 12-18-807.

A hearing was held on April 23, 2015, to determine if Ogborn's name should be placed on the child-maltreatment registry. After reviewing the pleadings and hearing arguments of counsel, the ALJ granted DHS's motion for summary judgment. The court found that the Benton County Circuit Court had entered an order concluding that the children were dependent-neglected due, in part, to inadequate food, malnutrition, and abuse by Ogborn. Because the parties, the factual occurrences, and the issues were the same in both proceedings and because Ogborn had a full and fair opportunity to be heard on those issues at the adjudication hearing, the ALJ held that it was precluded under Arkansas Code Annotated section 12-18-807 from considering any further evidence as to those issues. Since there were no remaining issues for an administrative hearing, the ALJ ordered that Ogborn's name be placed on the child-maltreatment central registry.

Ogborn then filed a petition for judicial review with the Benton County Circuit Court. After reviewing the record, the circuit court affirmed the decision of the ALJ, holding that the agency decision was not in violation of any constitutional or statutory provision; was not in excess of the agency's statutory authority; was not made upon unlawful procedure; was not affected by other error or law; was supported by substantial evidence of record; and was not arbitrary, capricious, or characterized by an abuse of discretion. It is from this ruling that Ogborn appeals.



## II.  *Standard of Review*

In the review of administrative-agency decisions, our scope is limited. *Ark. Dep't of Human Servs. v. Thompson*, 331 Ark. 181, 959 S.W.2d 46 (1998). We review the decision of the administrative agency and not the decision of the circuit court. *Id*. Our standard of review is whether there is substantial evidence to support the agency's findings. *Id*. We may only reverse the agency decision if

> (h) the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the agency's statutory authority;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error or law;
>
> (5) Not supported by substantial evidence of record; or
>
> (6) Arbitrary, capricious, or characterized by abuse of discretion.

*Id.* at 185, 959 S.W.2d at 48.

We will uphold the agency's decision if there is any substantial evidence to support it. *Teston v. Ark. State Bd. of Chiropractic Exam'rs*, 361 Ark. 300, 206 S.W.3d 796 (2005). Substantial evidence is evidence that is valid, legal, and persuasive and that a reasonable mind might accept to support a conclusion and force the mind to pass beyond speculation and conjecture. *Ark. Bd. of Exam'rs in Counseling v. Carlson*, 334 Ark. 614, 976 S.W.2d 934 (1998). The question is not whether the testimony would have supported a contrary finding, but whether it would support the finding that was made. *Id*. It is the prerogative of the

administrative agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *Id.*

## III.  *Analysis*

Ogborn challenges the ALJ's placement of her name on the child-maltreatment central registry, arguing that the ALJ erred (1) in finding that it was bound by the decision of the Benton County Circuit Court in the dependency-neglect adjudication and (2) in reviving DHS's motion for summary judgment after informing the parties that DHS had failed to provide specific findings on which to ascertain whether summary judgment was appropriate.

In conjunction with Ogborn's first argument, the ALJ in this case found that Ogborn was precluded from relitigating the maltreatment issues because those issues had been previously adjudicated by the circuit court in the dependency-neglect action.  The ALJ reached this conclusion after applying the principle of collateral estoppel and  Arkansas Code Annotated section 12–18–807(b).  We will consider the ALJ's decision on collateral estoppel, before considering its effect, if any, under Arkansas Code Annotated section 12–18–807.

Collateral estoppel, or issue preclusion, requires four elements be met before a determination is conclusive in a subsequent proceeding: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Powell v. Lane*, 375 Ark. 178, 186, 289 S.W.3d 440, 445 (2008); *State Office of Child Support Enf't v. Willis*, 347 Ark. 6, 59 S.W.3d 438 (2001). The party against whom collateral estoppel is asserted must have been a party to the earlier action and must have had a full and fair opportunity to litigate the issue

6

in that first proceeding. *Powell, supra.* Unlike res judicata, which acts to bar issues that merely could have been litigated in the first action, collateral estoppel requires actual litigation in the first instance. *Id.* The only issue here is whether Ogborn's stipulation at the adjudication hearing satisfies the "actually litigated" element of collateral estoppel.

Ogborn claims that collateral estoppel is not applicable. She contends that the dependency-neglect adjudication was based on her stipulation and not a full evidentiary hearing. Thus, she takes the position that the issues were not "actually litigated" for purposes of collateral estoppel. Ogborn argues that admissions and stipulations are not given issue-preclusive effect because facts so determined have not been actually litigated. She also analogizes stipulations to guilty pleas and cites our supreme court case, *Bradley Ventures, Inc. v. Farm Bureau Mutual Insurance Company*, 371 Ark. 229, 264 S.W.3d 485 (2007), for the proposition that "a guilty plea in a criminal case is not equivalent to a criminal conviction that has been 'actually litigated.'"

DHS, relying on our supreme court's opinion in *Powell*, 375 Ark. 178, 289 S.W.3d 440, asserts that a full evidentiary hearing is not required to invoke collateral estoppel; instead collateral estoppel requires only that Ogborn be given a full and fair opportunity to be heard on the issues. DHS is correct. Our supreme court has made it clear that in the context of collateral estoppel, "actually litigated" does not mean that the issue must be resolved by a full trial; instead, "actually litigated" in this context means that the issue was raised in the pleadings or otherwise; that the defendant had a full and fair opportunity to litigate the issue in question; and that a decision was rendered on the issue. *See Powell, supra.*

Here, Ogborn does not dispute that the issues of inadequate food, malnutrition, environmental neglect, and repeated and extreme cruelty were raised at adjudication and that she was present at that adjudication hearing and was represented by counsel. In the dependency-neglect proceeding, the circuit court had before it not only Ogborn's stipulation as to dependency neglect, but also the affidavit of facts filed by DHS to support adjudication, some photographs, and the medical records of the children. Ogborn had an opportunity at that time to contest the findings of adjudication but did not do so. The circuit court then entered specific dependency-neglect findings as to Ogborn; thereby rendering a decision on the issues. Ogborn did not appeal those findings. Under these facts, it is clear that the "actually litigated" element of collateral estoppel was satisfied.

We will now consider what effect that finding has on the ALJ's analysis under Arkansas Code Annotated section 12-18-807(b), which provides:

> (a) If a court of competent jurisdiction adjudicates a question that is an issue to be determined by the Office of Appeals and Hearings of the Department of Human Services, the prevailing party to the judicial adjudication who is also a party to the administrative adjudication shall file a certified copy of the judicial adjudication with the office.
>
> (b)(1) The office shall determine whether and to what extent the judicial adjudication has preclusive effect on the administrative adjudication by applying the principles of claim preclusion and issue preclusion.
>
> (2) The office shall not readjudicate any precluded issues.

Ark. Code Ann. § 12-18-807(a), (b).

Applying this section, the ALJ concluded that the dependency-neglect adjudication was issued by a court of competent jurisdiction, that the adjudication of dependency-neglect involved a question to be determined by the Office of Appeals and Hearings of the

Department of Human Services, and that section 12-18-807(b) and collateral estoppel precluded Ogborn from relitigating those issues. We find no error in this analysis.

Ogborn's last argument pertains to the ALJ's "revival" of DHS's "motion for summary judgment." DHS's motion, although titled a "motion for summary judgment" was, in reality, a request for the ALJ to determine under section 12-18-807(b) whether the decision of the circuit court in the adjudication precluded a relitigation of the issues by the ALJ. Such a determination is required by statute. As stated above, Arkansas Code Annotated section 12-18-807 provides:

> (b)(1) The office *shall* determine whether and to what extent the judicial adjudication has preclusive effect on the administrative adjudication by applying the principles of claim preclusion and issue preclusion.
>
> (2) The office *shall not readjudicate any precluded issues*.

(Emphasis added.)

Thus, regardless of whether DHS requested such a determination, the ALJ was required by statute to make it, and it would have been clear error for the ALJ to have readjudicated any precluded issue. Therefore, Ogborn's claim of error is not reversible.

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Keith, Miller, Butler, Schneider & Pawlik, PLLC*, by: *Mason L. Boling*, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.