Cite as 2021 Ark. App. 162

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-20-302

| | |
|---|---|
| LYLYN MITCHELL<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES<br>APPELLEE | **Opinion Delivered** April 14, 2021<br><br>APPEAL FROM THE SEVIER COUNTY CIRCUIT COURT<br>[NO. 67CV-18-106]<br><br>HONORABLE TOM COOPER, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

An administrative law judge (ALJ) with the Arkansas Department of Human Services (DHS) determined that Lylyn Mitchell's name shall be listed on the Arkansas Child Maltreatment Central Registry. The Sevier County Circuit Court affirmed the ALJ's determination. Mitchell now appeals and argues that substantial evidence does not support the findings of abuse. We affirm.

This case began with allegations that Mitchell's husband, Daryl, had abused their foster child, SS, in public. An investigation was initiated by Jessica Bragg of the Crimes Against Children Division of the Arkansas State Police (CACD). Bragg conducted interviews with Mitchell, Daryl, their eight-year-old son EM, and two foster children who had been placed in their home for approximately eight months—four-year-old SS and

three-year-old RS.[1] The investigation resulted in multiple true findings of child maltreatment against Mitchell and Daryl, who both requested an appeal. A hearing was held before an ALJ with DHS's Office of Appeals and Hearings to determine whether a preponderance of the evidence supported findings that the allegations of child maltreatment were true. Bragg, Mitchell, Daryl, and others testified at the hearing. The ALJ also stated that she would listen to the recordings of the interviews before making her decision. The ALJ ultimately found that three allegations against Mitchell were supported by a preponderance of the evidence and that Mitchell's name shall be listed on the Arkansas Child Maltreatment Central Registry. Mitchell petitioned for review in the Sevier County Circuit Court. The parties filed briefs and made arguments in the circuit court, which affirmed the order of the ALJ.

Our review is limited in scope and is directed not to the decision of the circuit court but rather to the decision of the administrative agency. *Smith v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 438, 559 S.W.3d 291. It is not the role of the circuit court or an appellate court to conduct a de novo review of the record; rather, review is limited to ascertaining whether there is substantial evidence to support the agency's decision. *Id.*

Substantial evidence is defined as valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion and forces the mind to pass beyond conjecture. *Id.* To establish an absence of substantial evidence, the challenging party must demonstrate that the proof before the administrative agency was so nearly undisputed that fair-minded persons could not reach its conclusion. *Id.* The question is not

---

[1]Due to his young age, RS did not answer questions and was merely observed.

whether the testimony would have supported a contrary finding but whether it supports the finding that was made. *Id*.

The Arkansas Administrative Procedure Act (APA) provides that a reviewing court may reverse or modify the agency's decision if it concludes that the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions, (2) in excess of the agency's statutory authority, (3) made upon unlawful procedure, (4) affected by other error or law, (5) not supported by substantial evidence of record, or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h) (Supp. 2019).

This court has previously noted that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures, to determine and analyze underlying legal issues affecting their agencies. *Smith*, *supra*. This recognition accounts for the limited scope of judicial review and the refusal of an appellate court to substitute its judgment and discretion for that of the administrative agency. *Id*. Thus, in making the substantial-evidence determination, we review the entire record and give the evidence its strongest probative force in favor of the agency's ruling. *Id*. Between two fairly conflicting views, even if the reviewing court might have made a different choice, the agency's decision must not be displaced. *Id*.

Arkansas Code Annotated section 12-18-103 (Supp. 2019) provides definitions of abuse under the Child Maltreatment Act, which include acts or omissions by a foster parent. Ark. Code Ann. § 12-18-103(3)(A). The ALJ found that Mitchell had committed abuse under two definitions. First, the ALJ found that Mitchell's actions had resulted in a

"nonaccidental physical injury" to RS. *See* Ark. Code Ann. § 12-18-103(3)(A)(v). The ALJ found that Mitchell admitted hitting the children with a ruler as a form of discipline, and she found that it was more likely than not that blunt, linear bruising on RS's back and leg was caused by the ruler and was a result of Mitchell's actions. The ALJ also attributed a bruise on EM's leg to Mitchell's use of the ruler, but the ALJ found that EM's injury was excluded from the definition of abuse under the physical-discipline exception. The ALJ found that the physical-discipline exception was not applicable to RS's injuries because Mitchell was not RS's parent or guardian.

The ALJ also found that Mitchell had committed abuse by intentionally or knowingly striking a child six years of age or younger on the face or head with or without physical injury. *See* Ark. Code Ann. § 12-18-103(3)(A)(vii)*(a)*. This finding was made regarding both SS and RS. The ALJ found that Mitchell had admitted in her recorded interview that she would "bop" the children on the head with a ruler when they misbehaved. Mitchell stated that although she was aware that it is against DHS policy to administer corporal punishment to foster children, she elected to disregard the rules, and she stated that she used the ruler as an aide in disciplining the children due to her petite stature. The ALJ found that EM and SS had credibly disclosed in their interviews that Mitchell had hit them and RS on the head with the ruler on more than one occasion.[2] The ALJ noted that Mitchell attempted to justify her actions by stating that she only "bopped" the children on their heads and did not rear

---

[2]Although the ALJ found that Mitchell would intentionally strike EM on the head, this act was not found to be abuse because EM was over the age of six and there was insufficient evidence that he had ever sustained an injury from this act as required under Arkansas Code Annotated section 12-18-103(3)(A)(vi)*(d)*.

back and strike them hard; however, the ALJ found that using the ruler on the children's heads as a planned form of discipline was not justified by the excuse that the actions were not "hard." The ALJ found that the purpose of corporal discipline is to inflict some degree of pain to a child in an effort to modify the child's misbehavior.

Mitchell argues that the physical-discipline exception, which the ALJ applied to exclude a bruise on EM from the definition of abuse, should also apply to the discipline of foster children. Section 12-18-103(3)(C) provides that abuse does not include physical discipline of a child when it is reasonable and moderate and is inflicted by a *parent or guardian* for purposes of restraining or correcting the child. (Emphasis added.) Mitchell argues that anyone who has custody of a child as a result of any judicial process or by means of statutory authority must be deemed to be a "parent or guardian" for the purpose of the abuse statutes. She claims that although DHS was the court-appointed guardian for SS and RS, DHS had delegated its authority to her as foster parent. Mitchell further argues that it leads to an absurd result to construe the statute such that the discipline imposed on her son is not abuse but the same discipline imposed on her foster child is abuse.

In *Arkansas Department of Human Services v. Parker*, 88 Ark. App. 222, 197 S.W.3d 33 (2004), a stepparent sought to have the physical-discipline exception applied to him. The exception, then codified at Arkansas Code Annotated section 12-12-503, applied only to parents and guardians. "Guardian" was not defined by the statute, but the *Parker* court adopted a broad definition to include stepparents, foster parents, and others. The supreme court applied this definition in *Arkansas Department of Health & Human Services v. R.C.*, 368 Ark. 660, 249 S.W.3d 797 (2007). In 2009, however, section 12-12-503 was repealed, and

the Child Maltreatment Act was codified at sections 12-18-101 et seq. Since that time, "guardian" has been defined in the statute to mean "any person, agency, or institution, as defined by § 28-65-101 et seq., whom a court of competent jurisdiction has so appointed." Ark. Code Ann. § 12-18-103(11).[3] It is undisputed that Mitchell is not a guardian pursuant to this definition. The statute refers to foster parents and other caretakers in other subsections, but the legislature clearly intended to limit the physical-discipline exception to parents and guardians. We do not agree with Mitchell that this leads to an absurd result; instead, it reflects the discipline limitations for foster parents. Accordingly, we agree with the ALJ that the exception does not apply to Mitchell's discipline of her foster children.

Mitchell also argues that her acts of "bopping" the children on the head with a ruler do not constitute "striking" a child on the head as required by the statute. Mitchell testified that her ruler was "rubbery" and that by bopping she meant "tapping." She argues that striking is defined in dictionaries as dealing a "blow or stroke" or coming into contact forcefully. She claims that there was no evidence that the children were injured or suffered any pain from her actions.

The statute defines abuse as intentionally or knowingly striking a child six years of age or younger on the face or head with or without physical injury. Ark. Code Ann. § 12-18-103(3)(A)(vii)*(a).* In EM's recorded interview, he disclosed that Mitchell hits all of the children on the head with the ruler when they are bad. When SS was asked in her interview

---

[3]"Parent" is also defined in the statute to mean "a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has been found by a court of competent jurisdiction to be the biological father of the child." Ark. Code Ann. § 12-18-103(15).

if she had ever been spanked with the ruler, SS answered that she sometimes gets spankings on the head with the ruler and that it "hurts really bad." As stated above, the ALJ found that EM and SS had credibly disclosed in their interviews that Mitchell had intentionally struck SS and RS on the head with a ruler as a form of punishment. The ALJ found that using the ruler on the children's heads as a planned form of discipline, with the likely purpose of inflicting some degree of pain, was not justified by Mitchell's excuse that her actions were not "hard." Based on the children's disclosures, we hold that there was substantial evidence for the ALJ to find that Mitchell's actions constituted striking the head. Accordingly, we affirm the ALJ's findings of abuse.

Affirmed.

GRUBER and MURPHY, JJ., agree.

*Churchwell Law Office*, by: *Joseph Churchwell*, for appellant.

One brief only.