283 S.W.3d 206 (2008)
Dennis BAILEY; Garland County Cash Advance, Inc.; Beebe Fast Cash, Inc.; Bryant Fast Cash, Inc.; Corning Fast Cash, Inc.; Harrison Fast Cash, Inc.; Little Rock Fast Cash, Inc.; Mountain Home Fast Cash, Inc.; Searcy Fast Cash, Inc.; Sheridan Fast Cash, Inc.; Walnut Ridge Fast Cash, Inc.; Bailey's Fast Cash, Inc.; Fast Cash Check Cashers, Inc.; and Central Arkansas Check Cashing, Inc., Appellants,
v.
ARKANSAS STATE BOARD OF COLLECTION AGENCIES, Appellee.
No. 07-896.
Supreme Court of Arkansas.
April 17, 2008.
*207 Paul Johnson, Little Rock, for appellants.
Dustin McDaniel, Att'y Gen., by: Arnold Jochums; and Thrash Law Firm, by: Thomas P. Thrash, Little Rock, for appellee.
TOM GLAZE, Justice.
Appellant Dennis Bailey is the owner of fourteen businesses, located across Arkansas,[1] that are or were engaged in check-cashing and deferred-presentment transaction operations. Bailey applied for licenses for thirteen of those businesses in January 2005, but after discovering that other businesses he owned had previously been found to be in violation of state laws, the Arkansas State Board of Collection Agencies ("the Board") declined to issue him a permit. In March 2005, Bailey applied to the State of Missouri to organize BMB Finance Company, LLC ("BMB"). Missouri issued BMB a license to operate,[2] and Bailey then set up his Arkansas businesses, structuring the deferred-presentment transactions conducted at those businesses as "loans" from BMB, which loans were then "serviced" by the Arkansas businesses.
On March 10, 2005, the Board wrote to Bailey and instructed him to "cease all check cashing as he [did] not have a check-cashing license and [was] operating in violation of the law." Over the next few months, the Board's investigators went to each of Bailey's stores and determined that he was still engaging in check-cashing and deferred-presentment transactions. In addition, the Board determined that BMB was not authorized to enter into loan transactions in Arkansas.
On June 28, 2006, the Board held a hearing on Bailey's alleged violations and determined that he had violated the Arkansas Check-Casher's Act, Ark.Code Ann. § 23-52-101 et seq. (Supp.2005), by operating his check-cashing and deferred-presentment operations without licenses. The Board entered an administrative order that same day in which it voided all check-cashing *208 and loan transactions into which the Bailey businesses had entered. It then fined Bailey and each of his businesses $1000 for each check-cashing violation transaction in 2006, totaling $562,000; fined Bailey and his businesses $250 for each deferred-presentment transaction in 2006, totaling $725,250; fined him $20,200 for the illegal operation of a Pine Bluff store in 2005;[3] ordered him to cease all operations immediately; and ordered him to refund any fees that had been collected from anyone for the services of check cashing or providing a deferred-presentment transaction or loan. In addition, the Board ordered Bailey to pay the Board's attorney's fees in the amount of $10,000.
Bailey filed a petition for judicial review of the Board's administrative order on July 10, 2006. After a hearing on March 2, 2007, the Pulaski County Circuit Court entered an order on April 13, 2007, affirming the decision of the Board. The court entered judgment in the Board's favor on May 1, 2007, nunc pro tunc to April 13, 2007, ordering Bailey to pay $1,417,450 to the Board. Bailey filed a notice of appeal on May 30, 2007, and now raises one point for reversal, contending that the circuit court should have remanded the matter to the Board because the Board's decision was not based on sworn testimony.
Bailey takes issue with the fact that the testimony of Peggy Matson, the Executive Director of the Board, "was replete with... hearsay[,] ... was not under oath, [and] was not verified." At the hearing before the Board, Bailey asked the Board to exclude any hearsay testimony, but the hearing officer declined to "make a blanket ruling prohibiting any paper that somebody... may offer into evidence on hearsay grounds." The hearing officer noted that, since the Rules of Evidence did not apply to administrative proceedings, he did not "understand that hearsay objections, just in and of themselves, [would] be applicable like they would be in an ordinary court of law." Bailey responded that, if the hearing officer was going to allow hearsay, he would "stipulate" to all of the exhibits and documentation, "subject to the [hearing officer's] decision [on his hearsay objection]."
After Bailey's stipulation to the exhibits, Matson informed the hearing officer that she had put together a summary of her investigation; her summary was offered as an exhibit, which was labeled S-2. Matson explained that the summary was a narrative of what her testimony would be if she had gone through all of the exhibits, previously entered as exhibit S-1, page by page. After the reporter marked the exhibits and the hearing officer accepted them, Matson then went on to describe the investigation of Bailey and how it was determined that he was engaging in check-cashing and deferred-presentment transactions in each of his fourteen locations throughout Arkansas. At the conclusion of the hearing, Matson asked that Bailey be found to have violated the Check-Casher's Act, fined, and ordered to cease all operations. The Board agreed, and, as noted above, an order to that effect was entered on June 28, 2006.
Bailey contends that the Board's decision was improper because it was based on Matson's written testimony, which he claims was nothing more than hearsay. In addition, he urges that Matson's testimony was neither under oath nor verified. However, after the hearing officer rejected his *209 hearsay objection, not only did Bailey stipulate to Matson's documentary evidence, he also failed to object to the fact that her testimony was written and not under oath. This court has been resolute in requiring an objection to first be made at the administrative level, holding many times that it is an appellant's obligation to raise such matters first to the administrative agency and obtain a ruling. See Franklin v. Ark. Dep't of Human Servs., 319 Ark. 468, 892 S.W.2d 262 (1995) (declining to review appellant's arguments that she was denied due process and her right to a hearing under Ark.Code Ann. § 25-15-208 where such arguments were not made to the administrative tribunal); Wright v. Ark. State Plant Bd., 311 Ark. 125, 842 S.W.2d 42 (1992) (declining to reach "several arguments" that were not raised before the Board); Alcoholic Bev. Control Div. v. Barnett, 285 Ark. 189, 685 S.W.2d 511 (1985) (declining to reach a challenge to the timing of two local-option elections because the argument was not raised before the Board).
The rationale behind this rule is that, if the appellate court were to set aside an administrative determination on a ground not presented to the agency, it would usurp the agency's function and deprive the agency of the opportunity to consider the matter, make its ruling, and state the reasons for its action. See Wright, supra. Therefore, we decline to reach Bailey's argument that Matson's testimony was required to be under oath.
Moreover, to whatever extent Bailey might have preserved his challenge to the alleged hearsay nature of Matson's testimony,[4] his argument is without merit. The United States Supreme Court has held that, in certain circumstances, hearsay evidence can constitute substantial evidence in an administrative proceeding. See Richardson v. Perales, 402 U.S. 389, 402, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); see also Smith v. Everett, 276 Ark. 430, 431, 637 S.W.2d 537, 538 (1982) (evidence consisting of affidavits was "competent and constituted substantial evidence to support the Board's findings"); Bockman v. Ark. State Med. Bd., 229 Ark. 143, 313 S.W.2d 826 (1958). Accordingly, we affirm the decision of the Board.
NOTES
[1] His businesses were located in Beebe, Bryant, Corning, Harrison, Little Rock, Mountain Home, Searcy, Sheridan, Walnut Ridge, Fordyce, Camden, Hot Springs, Cabot and Newport.
[2] On January 26, 2006, Joe Crider, the Supervisor of Consumer Credit in the Missouri Division of Finance, wrote to Bailey and informed him that the Missouri business license only authorized Bailey to conduct business at BMB's West Plains, Missouri, location.
[3] The Board determined that Bailey had operated "Pine Bluff Fast Cash, Inc." without a permit from the Board in 2004; the Board fined him $20,200 at that time. Bailey submitted a check for that amount but subsequently stopped payment on that check, and the fine remained unpaid at the time of the 2006 hearing.
[4] We note that Bailey stipulated to the introduction of what he termed "hearsay," but did so subject to his previous objection.