Cite as 2021 Ark. App. 500

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
**No.** CV-20-439

| | |
|---|---|
| CURIS PHARMACY (SENTRIX PHARMACY AND DISCOUNT, LLC), OS02705; AND KENNETH ZIELINSKI, PD10077 <br><br> APPELLANTS <br><br> V. <br><br> ARKANSAS STATE BOARD OF PHARMACY <br><br> APPELLEE | **Opinion Delivered** December 8, 2021 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, NINTH DIVISION [NO. 60CV-19-1052] <br><br> HONORABLE MARY SPENCER MCGOWAN, JUDGE <br><br> AFFIRMED |

## MIKE MURPHY, Judge

Appellants Curis Pharmacy a/k/a Sentrix Pharmacy & Discount, LLC (Sentrix), and Kenneth Zielinski appeal the decision of the Arkansas State Board of Pharmacy (Board) revoking their licenses to practice pharmacy in Arkansas. On appeal, the appellants contend that the decision of the Board is not supported by substantial evidence, but we disagree. We affirm.

## I. *Background Information*

Around 2018, the Board received information from the Arkansas Insurance Department (AID) regarding an investigation it was conducting into the business practices of Sentrix and Zielinski. Zielinski was the pharmacist in charge. Of specific concern to AID was the practice of representatives from Sentrix cold calling people who were recipients of workers'-compensation benefits, taking their information, contacting their doctors, filling

prescriptions for them, and then billing the workers'-compensation-insurance carrier thousands of dollars for what was later deemed medically unnecessary medication.

AID had provided the Board with the findings from three administrative review orders investigating the appellants' conduct with three separate patients. The story was mostly the same for each one. All three patients suffered different work-related injuries: dehydration, shoulder/knee injury, and thumb injury. Sentrix contacted them and led them to believe that the pharmacy was affiliated with their workers'-compensation carrier. After collecting their information, Sentrix prepared "Patient Request" forms for each of the patients. The forms had language such as "Your patient is requesting a prescription for a Topical Pain Cream. Please have the doctor sign, date and add the ICD-10 code. Please fax back to our Pharmacy" and "Medical Necessity: Avoid potential addiction to oral pain meds. Cannot perform ADL's on oral pain meds. Combining mult. Active ingredients into one dose." One form also stated, "ATTN: PATIENT REALLY WANTS CREAM FOR PAIN PATIENT WILL CALL TODAY." These forms were sent to the patients' doctors for their signatures.

Two of the doctors signed the forms and returned them to Sentrix. Despite his signature being on the form, the third doctor denied ever signing the form or prescribing any pain cream. Sentrix prepared a compound topical pain cream for all three patients. The same cream was sent to all patients, even though each suffered from different work-related injuries.

Sentrix billed the workers'-compensation-insurance carrier for the tubes of cream sent to the patients, and most were more than $900 a tube. After the carrier had consulted

with the University of Arkansas Medical Sciences College of Pharmacy Evidence Based Prescription Drug Program (UAMS), the carrier informed Sentrix that the cream was excluded from coverage because it was not reasonable or necessary for any of the patients' work injuries. Despite this notice, Sentrix continued to send refills of the cream to the patients and continued to bill the carrier.

After a hearing on the issue, the Board found that the appellants had committed (1) fraud, deceit, or misrepresentation in the practice of pharmacy and (2) unprofessional or dishonorable conduct in violation of Arkansas Code Annotated section 17-92-311(a)(1) and (a)(7) (Supp. 2021), respectively. It further found that the appellants were guilty of violating Arkansas Pharmacy Board Regulations 02-04-0001 and 02-04-0002, which provide additional guidance on unprofessional or dishonorable conduct as it relates to the practice of pharmacy. *See* 007.39.2-02-04-0001 & 0002 Ark. Admin. Code (WL current through Sept. 15, 2021). It found Sentrix guilty of not conducting its operations according to law and in a way that endangers the public's health and safety. Ark. Code Ann. § 17-92-407(c) (Supp. 2021).

The appellants' licenses were revoked, and they appealed under the Arkansas Administrative Procedure Act, codified at Arkansas Code Annotated sections 25-15-201 to -218 (Repl. 2014 & Supp. 2021). The circuit court affirmed the Board's decision. The appellants then timely appealed. On appeal, Sentrix and Zielinski contend that the findings of the Board are not supported by substantial evidence.

II. *Standard of Review*

In administrative appeals, we review the agency's decision, not the circuit court's.

3

*Dyer v. Ark. Ins. Dep't*, 2015 Ark. App. 446, at 7. We do so because "administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies." *Id.* at 7–8. We accord great deference to an administrative agency's expertise and give the evidence its strongest probative force in favor of the agency's findings. *Id.* at 12.

When reviewing administrative decisions, we review the entire record to determine whether any substantial evidence supports the agency's decision. *Holloway v. Ark. State Bd. of Architects*, 352 Ark. 427, 433, 101 S.W.3d 805, 809 (2003). To establish a lack of substantial evidence, the appellant must demonstrate that fair-minded people could not, on the evidence submitted, reach the conclusion arrived at by the agency. *Ark. State Bd. of Nursing v. Morrison*, 88 Ark. App. 202, 210–11, 197 S.W.3d 16, 21 (2004). The question is not whether the evidence would support any other finding but, instead, whether the evidence supports the finding that was made. *Id.*

The Board is authorized to revoke a license or permit if it finds the holder guilty of (1) fraud, deceit, or misrepresentation in the practice of pharmacy or (2) unprofessional or dishonorable conduct. Ark. Code Ann. § 17-92-311(a)(1) and (7).

The appellants contend that the Board's case against Sentrix and Zielinski was based upon Sentrix's communications with three patients and their respective physicians. On appeal, they argue that they did not make any misrepresentations, especially material misrepresentations, in their communications with the patients and physicians. They assert that "there is simply no evidence in the record that can be reasonably characterized as proof of fraud or deceit." We disagree.

4

III. *Substantial Evidence*

A. Agency Investigations

As previously mentioned, AID had provided the Board with the findings from three administrative review orders investigating the appellants' conduct with three separate patients. These findings were in stipulated exhibits and part of the record. The Board made the following findings.

1. *Patient A*

Patient A suffered severe dehydration while at work for the state of Arkansas on or about June 19, 2017, and submitted a claim under workers' compensation. On or about July 19, 2017, Patient A received a call from Sentrix, who represented itself as being affiliated with Patient A's workers'-compensation-insurance carrier and asked if he was still in pain. Sentrix told him it would provide pain cream that would be covered by the insurance carrier. Patient A never completed or signed any paperwork requesting it. Sentrix then faxed Patient A's doctor a form that stated "Patient Request" for topical pain cream and instructed the doctor to sign, date, and add the appropriate billing code for the cream. There were five refills listed on the prefilled-out form. After the doctor returned the completed form to Sentrix, the pharmacy sent Patient A compounded pain cream and billed the carrier $954.53 for the first tube of cream. The claim was denied by the Public Employee Claims Division (PECD) as not being medically necessary to treat dehydration, and there were comparable commercially available oral agents. Despite knowing the claim was denied and not medically necessary, the pharmacy continued to send a tube of pain cream every month until the refills were exhausted and sent the bills to PECD. After the denials, the pharmacy filed an appeal

and stated that it should be paid an additional 18 percent as a penalty for the claim not being paid in a timely manner. The appeal was denied by the Arkansas Workers' Compensation Commission.

## 2. *Patient B*

Patient B suffered injuries to the knees and left shoulder on or about August 3, 2017, while at work for the state of Arkansas. Sentrix called Patient B and represented that it was affiliated with the workers'-compensation-insurance carrier and stated it would send a pain cream that would be covered by the workers'-compensation-insurance provider. Sentrix told Patient B's physician's office that the patient had requested the pain cream. The pharmacy then faxed over a prescription form to sign that stated "Patient's Request" for a compounded pain cream and five refills. The physician signed the prescription form. The first tube of compounded cream was sent to Patient B on October 5, 2017, and a bill of $939.88 was sent to PECD. Again, the claim was denied as not being medically necessary, and there were comparable commercially available oral agents. Despite the denial, the pharmacy sent four additional tubes of cream and four additional bills to PECD.

## 3. *Patient C*

On or about September 13, 2017, Patient C had a left thumb injury while at work for the state. Again, Sentrix contacted Patient C and represented that it was affiliated with the workers'-compensation-insurance carrier and stated it would send a pain cream covered by her provider. The pharmacy contacted Patient C's physician's office and faxed a prescription to sign that stated "patient request" and had five refills. The physician did not sign the prescription form and did not prescribe any other compounded pain cream. On or

about November 2, 2017, Patient C was sent a tube of pain cream. The pharmacy sent a bill for $234.94 to PECD. The claim was also denied as not being medically necessary. Sentrix was notified of the denial. It continued sending refills and bills to PECD despite knowing this claim and all previous claims had been denied. Sentrix appealed and requested an additional 18 percent as a penalty for not being paid in a timely manner. This was denied. The Arkansas Workers' Compensation Commission then made a fraud report based on the pharmacy's filling a fraudulent prescription that it solicited but was never prescribed by the physician. Each patient was led to believe that the pharmacy was associated with workers' compensation. That is, at a minimum, a misrepresentation. But there is more.

## B. The Phone Script

Sentrix and Zielinski next explain that the communications with the patients followed a script, which was made part of the record. The appellants assert that the communications were not fraudulent, deceitful, or misrepresentative because "[e]very representation set forth in the Sentrix script is true and accurate." Here is an excerpt from the script:

> Good morning/afternoon (injured workers name).
>
> This is __. I'm with Sentrix pharmacy on a monitored line. I'm calling because our records indicate that you're seeing a doctor for moderate to severe pain due to a work-related injury. Is that correct? (any response should be presented in an empathic manner and tone).
>
> You are qualified for a non-narcotic topical pain cream which is covered 100% by workman's compensation. This is a prescription strength pain cream, as such it requires the approval of your workman's compensation doctor.

The patients were told that the prescription Sentrix was calling about was "100% covered by workers' compensation." That was not true. None of the creams in this case were

7

covered by the workers'-compensation carrier. The fact that no one ever paid for any of the pain cream is irrelevant. The script, on its face, is, at best misleading, at worst fraudulent, and at a minimum unprofessional.

C. Communications with Physicians

The appellants further assert that there was no false, materially misleading, fraudulent, or deceitful representations in the way they conducted their business with the physicians. They contend that once they had a patient's request for its pain relief cream and necessary information, they would prepare a prescription and fax it to the patient's physician's office. One of the Board's findings, however, was that Patient C's doctor did not sign the prescription form and did not prescribe this compounded pain cream.

The appellants assert that, even if that were true, they received a signed prescription from the physician's office; as such, they did nothing out of the ordinary or improper in filling the prescription. However, the administrative review order states that Doctor Norton's office reported he did not prescribe a compound cream and is unsure how his signature got on the prescription for the cream. He did not document or mention the cream in any of his treatment notes. The Board found that Dr. Norton had not signed the form. A fair-minded person could reach this conclusion because this finding is supported by the record. The Board is free to believe or disbelieve the appellants and decide what weight to give evidence contained in the record. *See Olsten Health Servs. v. Ark. Health Comm'n*, 69 Ark. App. 313, 12 S.W.3d 656 (2000).

Additionally, the first page of the compounding questionnaire, as required by the out-of-state pharmacy application for Arkansas and submitted into evidence by Sentrix and

Zielinski, states, "Sentrix formulates combinations of pharmaceutical-grade ingredients, as prescribed by a healthcare practitioner, into specific dosage forms, such as capsules, creams, gels, tablets, lozenges, suppositories and other forms. These drugs may be for humans or pets." The questionnaire then asks, "Are any of your compounds high dollar (greater than $500) products? Which ones?" Sentrix answered that "there are instances *when doctors formulate custom compounds which combine active ingredients resulting in a final product with a total cost greater than $500.*" (Emphasis added.) The forms, however, submitted to the doctors were under the heading "Patient Request." These prescriptions were not customized by a physician. They were the same percentages of the same ingredients. Patient A's creams cost over $900, while Patient C's cost around $200 after several months and constant denials for payment. This was false and misleading.

## IV. *A Note on Hearsay*

The dissent would have us say that this is not a typical standard-of-review case. And it is true that many of the Board's findings hinged on the findings in the administrative review orders. The appellants couched it as hearsay within hearsay, and it does bear discussing.

The rules of evidence are relaxed in an administrative proceeding. *Dyer v. Ark. Ins. Dep't*, 2015 Ark. App. 446, at 11, 468 S.W.3d 303, 310. Hearsay is normally admissible in administrative proceedings if it is reliable and probative. *Id.*; *Collins v. Ark. Bd. of Embalmers & Funeral Dirs.*, 2013 Ark. App. 678, at 8, 430 S.W.3d 213, 217–18. Here, there was never any objection to the admission of the administrative review orders and no argument was made that it would be improper to consider the findings for the truth of the matter asserted.

9

In fact, the administrative review orders were stipulated exhibits.

It is without question that the information in the administrative review orders is probative. But it is also reliable, especially when compared against the script that the appellants admit using when soliciting patients. The script itself says that the claimants "are qualified for a non-narcotic topical pain cream which is covered 100% by workman's compensation." Compare this with the following excerpt from the administrative review order for Patient A:

> The claimant reported that the provider represented as being affiliated with the workers' compensation insurance carrier and asked him if he still had pain. When the claimant confirmed that he still had pain, the claimant said Sentrix Pharmacy & Discount told him they were going to send him a compound cream that would be covered by the workers' compensation insurance carrier.

Hearsay evidence can constitute substantial evidence in an administrative proceeding. *Bailey v. Ark. State Bd. of Collection Agencies*, 373 Ark. 222, 226, 283 S.W.3d 206, 209 (2008). It was not erroneous for the Board to review the administrative review orders, which were stipulated exhibits made part of the record, and reach a conclusion therefrom.

IV. *Conclusion*

The appellants would have us view the evidence in a light more favorable to them to reach a conclusion different from the Board's. That is not the test. Our review is simple. If there is substantial evidence to support the agency's decision, we affirm the agency's decision. *Ark. Health Servs. v. Desiderata, Inc.*, 331 Ark. 144, 958 S.W.2d 7 (1998). Giving the evidence here its strongest probative force in favor of the agency's ruling, which we are required to do, *Ark. State Police Comm'n v. Smith*, 338 Ark. 354, 994 S.W.2d 456, we hold that the Board's findings and conclusions are supported. Accordingly, it was not erroneous

to revoke Sentrix's pharmacy permit and Zielinski's pharmacy license.

Affirmed.

WHITEAKER and BROWN, JJ., agree.

HIXSON, JJ., concurs.

BARRETT and VAUGHT, JJ., dissent.

**KENNETH S. HIXSON, Judge, concurring.** I concur with the majority opinion, but I write this concurrence to illuminate the risk of inartful presentation of evidence in administrative hearings. The presentation of the evidence was described in the majority and dissenting opinions, and both opinions discuss the application of the hearsay rule of evidence in administrative proceedings. Having read both opinions, the thought that immediately comes to mind is that, surely, there is a difference between *relaxing* the rules of evidence and *ignoring* the rules of evidence.

In this case, the administrative agency revoked the licenses of both a pharmacist and a pharmacy (appellants). These licenses are not trivial and are granted only with the satisfactory completion of significant educational and professional requirements. However, these quasi-judicial proceedings can strip a pharmacist and a pharmacy of their rights and privileges on the basis of second- and third-hand accounts of remote conversations. Here, a crucial piece of evidence was based on an alleged remote conversation between the representative of the pharmacy and a patient. The string goes like this: During the initial introductory telephone call from the pharmacy representative to the patient, in the course of reading the prepared script, the pharmacy representative allegedly told the patient that the pharmacy was affiliated with his workers'-compensation-insurance carrier. The patient

11

allegedly later repeated this "affiliation" statement to the insurance-department adjuster. The adjuster repeated this "affiliation" statement in his written report. Then, at the hearing, the managing attorney for the insurance department testified, from the reports, that the pharmacy representative told the patient that the pharmacy was affiliated with the workers'-compensation carrier.

I can think of no other judicial setting that multiple levels of hearsay testimony such as this would be allowed. Of importance to this court and our standard of review is that our hands are tied. We review the evidence that was admitted and presented at the hearing. Both the majority and the dissent contain the proper precedent that the rules of evidence are relaxed in administrative proceedings and that hearsay is normally admissible in these proceedings if it is reliable and probative. *Dyer v. Ark. Ins. Dep't*, 2015 Ark. App. 446, 468 S.W.3d 303.

While the majority and dissenting opinions fairly set forth their respective positions, it is important to fully insert the colloquy that took place when the hearing began.

> HEARING OFFICER: All right. [Attorney], I have an explanation of administrative hearings. We can dispense with that if you are familiar with these.
>
> [ATTORNEY]: I'm -- I'm reasonably familiar and I think we can dispense with that, if that's okay with Mr. Daniel and the Board.
>
> MR. DANIEL: It is.
>
> HEARING OFFICER: He is very familiar with them, and since I read these about ten times a day when I have hearings, I'll happily dispense with it. You understand that the rules of evidence are relaxed and all of that?
>
> [ATTORNEY]: Yes.

12

Immediately after this colloquy, the attorneys for both the Board and the appellants offered several exhibits, which included the administrative review orders from the workers'-compensation commission and an alleged script that was used by the pharmacy representative. These exhibits were admitted *without objection* perhaps due to the relaxation of the rules of evidence. The review order regarding claimant A's (also referred to in the record as Patient A's) claim states, "Upon inquiry by the Administrator,[1] the claimant reported that he was contacted via telephone by Sentrix Pharmacy & Discount on July 19, 2017. The claimant reported that the *provider represented as being affiliated with the workers' compensation insurance carrier* and asked him if he still had pain." (Emphasis added.) The review order regarding claimant B's (also referred to in the record as Patient B's) claim states, "Furthermore, upon investigation by the Administrator in this and multiple other workers' compensation cases, the Administrator has identified a trend or pattern regarding Sentrix Pharmacy & Discount. *Multiple claimants have reported receiving a telephone call from Sentrix Pharmacy & Discount in which it intimates that it is contacting the claimant on behalf of the workers' compensation insurance carrier* who wants the claimant to try a compound pain cream as treatment for the work-related injury." (Emphasis added.) Further, during the hearing, Mr. Montgomery, the insurance department's managing attorney, was allowed to testify as to what the claimants told the adjuster that the pharmacy representative allegedly said. All of this evidence was introduced without objection by the appellants' attorney.

---

[1]There may be yet another level of hearsay. The record reflects that the insurance adjuster called claimant A, and claimant A told the adjuster that the pharmacy was "affiliated." The review order admitted into evidence indicated that an "Administrator" made a phone call during the investigation that revealed the "affiliation." For purposes of this concurrence, this possible difference is not relevant.

My question now on review is how in the world is this court supposed to review these hearsay statements. Because this evidence was admitted without objection, appellants failed to challenge whether the hearsay statements were admissible under the standards announced in *Dyer*, which states that hearsay is normally admissible in these proceedings *if it is reliable and probative*. While these hearsay statements arguably are probative, are they reliable? Because their reliability was not challenged below, our hands are now tied on appeal, and we must affirm under our standard of review. It is also important to note that neither appellant appeared at the hearing; therefore, the hearsay statements stood unrefuted. While the appellants argue on appeal that the "affiliation" statement is not an accurate representation of the phone conversation, the appellants presented no evidence to contradict the statement. Therefore, we are left on review with unrefuted hearsay statements that were admitted into evidence without objection.

To establish an absence of substantial evidence on appeal, the *challenging party* must demonstrate that the proof before the administrative agency was so nearly undisputed that fair-minded persons could not reach its conclusion. *Mitchell v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 162, 622 S.W.3d 644. Moreover, our supreme court has held that hearsay evidence can constitute substantial evidence in an administrative proceeding. *Bailey v. Ark. State Bd. of Collection Agencies*, 373 Ark. 222, 226, 283 S.W.3d 206, 209 (2008). Thus, as a result of this appellate precedent, we have affirmed the revocation of a pharmacy license and a pharmacist's license on the basis—at least partially—of second- and third-hand testimony.

Upon further reflection, perhaps this is not a concurrence but more of a warning to attorneys who practice before administrative agencies. Yes, there are rules of evidence, but

14

are they relaxed or ignored in administrative proceedings?  The bottom line is that even in administrative proceedings, the parties must make a sufficient record of issues below to allow this court to conduct a meaningful review.

**STEPHANIE POTTER BARRETT, Judge, dissenting**.  At the hearing before the Arkansas State Pharmacy Board (Board), counsel for the Board focused its claim of fraud, deceit, and misrepresentation against Sentrix and Zielinski on only two issues: (1) whether Sentrix made fraudulent misrepresentations to three claimants over the phone that it was affiliated with the claimants' workers'-compensation insurance carriers and (2) whether Sentrix filled a prescription that had not been signed by that claimant's treating physician.

Because of the lack of evidence presented by the Board at the hearing, I would hold that substantial evidence fails to support the Board's finding that Sentrix and Zielinski—by nature of his being the pharmacist in charge—misrepresented themselves as the claimants' workers'-compensation carrier and that they filled a prescription that was not signed by the claimant's treating physician. Accordingly, I would reverse and dismiss.

I. *Alleged Misrepresentations to the Patients*

First, the majority's version of Sentrix's practice of soliciting workers'-compensation claimants that led to this administrative hearing is inaccurate and incomplete. The majority summarily concludes, without any examination or discussion of the actual evidence presented at the hearing, that "Sentrix contacted them [the claimants] and led them to believe that the pharmacy was affiliated with their workers'-compensation carrier," and "each patient was led to believe that the pharmacy was associated with worker's compensation." However, these conclusions are not supported by the evidence presented

15

to the Board. A close look at the evidence presented by the Board compels a contrary conclusion.

The Board argued at the hearing that Sentrix's misrepresentation about its affiliation with the claimants' workers'-compensation carriers was clearly demonstrated by the phone script used by the Sentrix employees. Two similar scripts were introduced into evidence, and there is simply no language in the scripts that can be construed as Sentrix's misrepresenting itself as the claimants' workers'-compensation carrier. A *complete* review of the phone script is instructive. The caller introduces himself or herself to the prospective patient and says the caller is with Sentrix pharmacy and is calling because the pharmacy's records indicate the patient is seeing a doctor for moderate to severe pain due to a work-related injury. Patient is told he or she is qualified to receive a nonnarcotic topical pain cream at no cost to the patient and is 100 percent covered by the patient's workers'-compensation-insurance carrier. The patient is told that it is prescription-strength pain cream and requires the approval of the patient's workers'-compensation doctor. Then the caller asks a series of introductory questions. The introductory questions are straightforward:

- Do you still have an open and active claim?
- If yes, who is the workers comp provider?
- What part of your body was injured on the job?
- When is your next appointment?
- What is the name of your workers' compensation physician?
- What is/was the name of the employer when you got hurt?
- What was the date of your accident?
- And finally, what is your date of birth?

The caller concludes the conversation by thanking the patient and reiterates that the prescription must be approved by the patient's physician, and the pharmacy will work on getting the medication to the patient. A plain reading of the script makes it very clear that

16

Sentrix is not "affiliated" with the workers'-compensation-insurance carrier as found by the Board. Rather, the script, on several occasions, clearly identifies the caller as a representative of Sentrix Pharmacy—not a representative of a workers'-compensation carrier because if Sentrix were associated with the carrier, it would already have the information requested.

By simply reading the majority opinion, one could be led to believe that Sentrix was engaging in fraudulent activity. However, the majority points to only part of the phone script that was before the Board. Additionally, there was no evidence at the hearing that the Sentrix employees who contacted Patients A, B, and C deviated from the script. The Board did not call any of the three claimants to testify about what they were told by the Sentrix employee. The Board did call two witnesses: Robert Montgomery, the managing attorney of the state employee's workers'-compensation administrator; and Dr. Brenda McCrady, the assistant director of the Board. Dr. McCrady was not asked about this issue at all. When Montgomery was asked about the evidentiary basis for the allegation that Patient C was told by Sentrix that it was affiliated with the workers-compensation carrier, he spoke in general terms and did not provide any evidence specific to the three claimants involved in this case.

Thus, the script clearly demonstrates that the Sentrix employee identified himself or herself to the claimants as a representative of the pharmacy. The Board's two witnesses did not offer any testimony regarding the allegation that the Sentrix employee told the three claimants that Sentrix was affiliated with their respective workers'-compensation carriers.

This leaves us with one sentence to support the Board's findings, which is found in the findings of fact in a 2018 administrative review order issued by the workers'-

17

compensation commission on a separate issue.[1]  The Board argues on appeal that Patient A *testified* at the administrative review hearing that Sentrix contacted him and represented that it was affiliated with his workers'-compensation-insurance carrier. The assertion that Patient A testified at the administrative review hearing is not supported by the record at all. In the finding of fact, it is noted that "upon inquiry by the Administrator . . . the claimant reported that the provider represented as being affiliated with the workers' compensation insurance carrier and asked him if he still had pain."  I would hold that this one statement is not sufficient to support the Board's finding that Sentrix misrepresented itself as the workers'-compensation carrier to Patient A.[2]

I recognize that the rules of evidence, double hearsay in this case, are relaxed in administrative proceedings and that hearsay is normally admissible in these proceedings if it is reliable and probative. *Dyer v. Ark. Ins. Dep't*, 2015 Ark. App. 446, 468 S.W.3d 303. However, I would hold that this one statement is neither reliable nor probative. This was an administrative order on a separate matter entirely. There is nothing in the record that establishes Patient A actually said this—it is simply the interpretation of an investigator who talked to Patient A on the phone looking into whether to pay a provider for an expensive prescription (not investigating whether there was fraud, deceit, or misrepresentation). Thus,

---

[1]The issue at the administrative review hearing was whether Sentrix was entitled to payment for the pain cream it sent to Patient A.

[2]There was no similar statement in the record relating to Patients B or C.  However, the Board findings contain the exact same language for all three patients that the caller made the patient believe it was contacting the patient on behalf of the workers'-compensation-insurance carrier.  There is no evidence in the record that supports these two findings as to Patients B and C.

our role is to decide if this one allegation that may or may not be reliable or probative is enough to revoke these pharmacy licenses. I do not believe it is. I would hold that more evidence is required to revoke the pharmacy licenses of Sentrix and Zielinski. The Board could have called Patient A to testify at the hearing, but it did not. The Board could have requested the Sentrix phone recordings or a transcript of the calls between the Sentrix employee and these three patients, but it did not. Accordingly, I would hold that substantial evidence does not support the Board's finding that Sentrix misrepresented its role as being affiliated with Patient A's workers'-compensation carrier.

In addition, the majority focuses on a different statement to support its decision from the phone script—that the prescription pain cream was "100% covered by workers'-compensation"—and concludes because this statement was not true, the script is "at best misleading, at worst fraudulent, and at a minimum unprofessional." First, the Board did not make this argument below. Although the Board's findings include the general statement that the pain cream would be covered by workers'-compensation, there are no specific findings that this particular statement led the three patients to believe that Sentrix was affiliated with the claimants' workers'-compensation carriers. By reaching this conclusion, the majority is reviewing this case de novo and making its own findings of fact, both of which are improper. *Ark. State Police Comm'n v. Smith*, 338 Ark. 354, 994 S.W.2d 456 (1999) (according to the Arkansas Administrative Procedure Act, Arkansas Code Annotated sections 25-15-201 to -220 (Repl. 2014 & Supp. 2021), it is not the role of the circuit courts or the appellate courts to conduct a de novo review of the record).

19

## II. *Physician Signature on Prescription for Patient C*

The Board also found that Sentrix was guilty of fraud, deceit, or misrepresentation because it filled a prescription that had not been signed by Patient C's treating physician, Dr. Brian Norton. Specifically, the Board found that Patient C's doctor did not sign the prescription form and did not prescribe the compounded pain cream, and the majority states that "[t]he Board found that Dr. Norton had not signed the form." Therefore, the majority opines that a fair-minded person could reach this conclusion because this finding is supported by the record. I disagree. There is a lack of substantial evidence supporting this finding as well.

First, there was no allegation raised below that the pharmacy was fraudulently signing these prescriptions, and there was no evidence presented or a finding that the pharmacy signed Dr. Norton's name without consent. In fact, the evidence is quite the opposite. After speaking to the prospective patients, the Sentrix representative would submit a request for a prescription to the patient's treating physician's office. The physician's office would then return the prescription back to Sentrix with a doctor's signature authorizing the prescription. This is what happened with Patients A and B. However, there was a finding that the treating physician for Patient C did not authorize or sign the prescription form. The record clearly demonstrates otherwise. On October 23, 2017, Sentrix sent a prescription form to Patient C's physician, Dr. Brian Norton. On October 31, the form was returned to Sentrix with Dr. Norton's (purported) signature authorizing the prescription. That same day, a second request-for-prescription form was sent to Dr. Norton's office with a handwritten notation that began "as per MD" and reducing the amount of pain cream prescribed for Patient C.

This prescription was also signed by Dr. Norton and returned to Sentrix authorizing the prescription in the lower amount. The majority omits any reference to this second prescription completely and holds that Patient C's physician never authorized or signed the prescription. Clearly, there is evidence that forms were sent to the physician's office, and the forms were signed and returned to Sentrix. The form may have been signed by someone in Dr. Norton's office, but there is absolutely no evidence that Sentrix forged the document or filled the prescription without a signed prescription by a doctor.

Second, Dr. Norton did not deny that his signature was on the prescription. The statement attributed to Dr. Norton in an administrative-review order regarding Sentrix's appeal of the denial of payment for Patient C's pain cream notes that Dr. Norton's office reported that it did not prescribe a compound cream and was "*unsure how his signature got on the prescription for the cream*." (Emphasis added.) This statement does not support the Board's finding that Dr. Norton did not sign the prescription. To the contrary, the statement confirms that it is his signature on the prescription. All the evidence presented in this case demonstrates that Sentrix filled prescriptions that were signed by the treating physicians of Patients A, B, and C.

I agree that elements of Sentrix's business practice appear shady and distasteful. Even the attorney for Sentrix and Zielinski conceded this at the hearing. However, shady and distasteful are not the standards of review this court is required to apply in this case. While I recognize that our standard of review in administrative appeals is more limited than in a typical appeal, and we give great deference to the Board's expertise and view the evidence in the strongest probative force in favor of the Board, I would hold that substantial evidence

presented at this Board hearing does not support the Board's findings of fraud, deceit, and misrepresentation. Accordingly, I would reverse and dismiss.

VAUGHT, J., joins.

*Putman Law Office*, by: *William B. Putman*, for appellants.

*Leslie Rutledge*, Att'y Gen., by: *Nga Mahfouz*, Sr. Ass't Att'y Gen., for appellee.